SYLVIA G. ADAM *vs.* NEW ENGLAND INVESTMENT CO.

JULY 7, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Corporations.   Contracts.   Stocks and Stockholders.*

Plaintiff was the owner of certain shares of the X. Co.  The directors of
  defendant corporation (which was authorized to purchase stock of other
  corporations) voted to purchase all available stock of the X. Co. at $45 a
  share.  Thereafter the president of defendant, who was also a director and
  general manager agreed with plaintiff for the purchase of her stock, giving
  plaintiff about $27 a share, by the terms of which agreement plaintiff delivered
  her stock in the X. Co., and received shares in defendant company, redeem-
  able at a stipulated price at any time after six months from the date of such
  transfer.  A new certificate in the X. Co. was issued to defendant.  At vari-
  ous times plaintiff presented her certificate for redemption, and was paid by
  the treasurer of defendant, from its funds, for a portion of the shares and
  a new certificate issued for the remainder, leaving a balance of 900 shares
  which had been tendered and payment refused.  The stockholders of
  defendant never ratified the agreement made by its president, nor were
  the re-purchases ratified by any formal vote of the directors.  The X. Co.
  through the control of its stock by defendant was put into liquidation and
  most of its assets absorbed by defendant.

*Held*, that defendant having express authority to hold stock in other com-
  panies and the directors having voted to purchase the stock of the X. Co.,
  without specifying who should do the purchasing, the president and
  general manager was the proper and logical agent to carry such vote into
  effect.

*Held*, further, that the vote did not prohibit the purchase of stock at a less

price than that fixed, nor did it prohibit defendant from obtaining longer terms of payment; and the effect of the agreement was simply to postpone the time of payment.

(2)   *Corporations.   Ultra Vires.   Ratification of Act of Officer.*

Where the president and general manager of a corporation assumes to act in its behalf and for a purpose authorized by its charter and by vote of its directors, and the terms of the contract are made known to the treasurer who acting upon the agreement issues stock certificates to the other party and pays out funds of the company, and after knowledge of such contract by the directors they make no offer to return the consideration received by the corporation, but continue to retain the benefit of it, the corporation thereby ratifies the act of its officer.

(3)   *Corporations.   Power to Purchase Own Stock.   Ultra Vires.*

Where upon an agreed statement of facts it appears that a sale of its stock was made by a corporation upon the express condition of re-purchase of the same by the company for a fixed price and at a fixed time, such transaction constitutes a conditional sale of the stock and an indivisible contract, which (no rights of creditors or of other stockholders being involved) is not *ultra vires*, and vendee has a right to recover for the value of the stock at the agreed price.   Whether a corporation has an implied power to purchase its own stock under other circumstances, is not decided.

ASSUMPSIT.   Heard on certification on agreed statement of facts.

PARKHURST, J.   This is an action of trespass on the case for promises broken, brought in the Superior Court for Providence County; and upon an agreed statement of facts, the action, being at issue on its merits, was on May 2, 1911, certified to this court to be here heard and determined, under Gen. Laws, R. I. 1909, cap. 298, sec. 4.

The facts agreed upon are, in substance, as follows: The plaintiff, Sylvia G. Adam, of the City of Cranston, on November 25, 1908, was the owner of one hundred and thirty-nine shares of the capital stock of the American Pickling Company, a Rhode Island corporation, doing business in Providence; and on or about the above date, the defendant, the New England Investment Company, also a Rhode Island corporation, which had received authority from the Legislature of the State of Rhode Island, at the January Session, 1908, to purchase shares of stock of other

corporations, was negotiating for and had purchased certain of the stock of the said American Pickling Company; the stock was bought at prices ranging from forty-five to sixty-five dollars; on October 27th, 1908, the directors of the defendant company voted to purchase all available stock in the American Pickling Company for $45 a share.  During the latter part of November, 1908, Joseph deChamplain, the president, general manager and a director of the New England Investment Company, entered into negotiations with the plaintiff through Joseph W. Adam, the husband of the plaintiff, for the purchase by the defendant company of the plaintiff's stock in the American Pickling Company. The proposition which he made and which was accepted by the plaintiff on the 25th day of November, 1908, was for the plaintiff to deliver her stock in the American Pickling Company to the New England Investment Company and to receive therefor fifteen hundred and twenty shares of the stock of the defendant corporation, with the distinct understanding that the defendant corporation would redeem and purchase from said plaintiff, said fifteen hundred and twenty shares, at the price of $2.50 per share, at any time after six months from the date of the transfer to it of the American Pickling Company stock; the deal above set forth was carried out, the plaintiff transferred her stock in the American Pickling Company to the defendant, and received from deChamplain a certificate for 1,520 shares of defendant's stock, upon the above conditions as to redemption and purchase.  At the time the plaintiff delivered her stock to the New England Investment Company she knew of the purchase by the defendant corporation of shares of the American Pickling Company stock from other stockholders.  The American Pickling Company received the plaintiff's certificate and issued a new certificate for 139 shares of its capital stock in the name of the defendant corporation, and the defendant corporation has held said stock in its name up to the present time.  . On the 21st day of April, 1909, the plaintiff presented to the treasurer of the New England Investment Company

for redemption 1,520 shares of the said defendant corporation stock, and on that day the treasurer of said corporation paid from the funds of said corporation the sum of $800 in payment of 320 shares, and issued to her a certificate for 1,200 shares of the said defendant corporation; on the 14th day of August, 1909, the plaintiff presented to the treasurer of the defendant corporation for redemption 1,200 shares of the stock of the defendant corporation standing in her name and payment was refused, but the president and general manager, deChamplain, promised to pay the plaintiff in full for all the stock of the New England Investment Company which she held, on October 1st, 1909; on the 4th day of October, 1909, the said plaintiff tendered to said treasurer of the said defendant corporation for redemption 1,200 shares of the capital stock of said New England Investment Company and the treasurer forthwith paid her $500 in payment of 200 shares of said stock and issued to her a certificate for 1,000 shares; on November 6th, 1909, the plaintiff presented for redemption 1,000 shares of the capital stock of the said defendant corporation and received the sum of $250 in payment for 100 shares and a certificate for 900 shares, the balance remaining after the above payment; and the plaintiff did on the 12th day of February, 1910, and on other dates thereafter tender to the said defendant corporation for redemption the 900 shares now standing in her name, but payment has been refused upon the same.

It is admitted that, upon each and every occasion when payment was made by the defendant corporation in redeeming the plaintiff's stock, the treasurer of the said defendant corporation paid from the funds of the corporation, either by check drawn by the corporation, or by the endorsement of funds payable to the order of the corporation, and that upon each and every occasion the certificates of stock issued to the plaintiff were properly signed and countersigned by the duly authorized officers of the corporation.

It is admitted that the stockholders of the defendant

corporation never passed any vote ratifying the agreement made by its president for the re-purchase of the plaintiff's stock, nor did the board of directors, by any formal vote, ratify such re-purchases, as he did in fact make.

The New England Investment Company acquired 540 shares of stock out of a total outstanding issue of 600 shares of the American Pickling Company; at the time of the purchase of the plaintiff's stock, the American Pickling Company was a going concern and solvent and has since the purchase of the plaintiff's stock by the defendant corporation been put into liquidation by the defendant and most of its assets absorbed by the New England Investment Company.

The United States Circuit Court appointed a receiver of the said defendant corporation on April 23rd, 1910, but said receivership was discharged by said court on March 3rd, 1911.

The present action is brought by the plaintiff to recover the value of 900 shares at present standing in her name and which the defendant company has failed to redeem at the agreed price of $2.50 per share, amounting to $2,250, together with interest thereon from the first day of July, 1909, to the date of the plaintiff's writ, amounting to $102.25.

Under the agreed facts, as above set forth, the plaintiff contends in argument that, as the defendant corporation had power to buy the stock of the American Pickling Company, under the amendment of its charter passed by the General Assembly at the January Session, 1908, and as the Board of Directors had voted on October 27th, 1908, to buy all available stock of the American Pickling Company at $45 per share, the purchase of the plaintiff's stock in the latter concern was within the power of the defendant corporation; and that the defendant corporation is bound to carry out its part of the bargain made at the time of the purchase; that even if deChamplain, the president and general manager of the defendant corporation, had no express authority to bind the defendant company, the defend-

ant company has, by its acceptance of the plaintiff's stock, and by its conversion of the same into cash through liquidation of the American Pickling Company, received the benefit of the trade which he made for it; and that, as it has never taken any steps to rescind the contract, but has by its action ratified the same, it is consequently estopped from denying the validity of the contract and its binding force upon it .

The plaintiff further contends that the contract which the plaintiff made, for the re-sale of her stock in the defendant company to it, was a *bona fide* sale with the date of payment by the purchaser postponed and the seller secured by the stock of the defendant company; that the defendant corporation had power to purchase its own stock; but that, even in case it is held that the defendant corporation had no right to agree to re-purchase its own stock delivered under the contract of the plaintiff the defendant corporation having received the benefits in full of the plaintiff's performance of her part of the contract, cannot refuse to perform its part upon the ground that the contract was *ultra vires*, because having taken the plaintiff's property and being unable to return the same, it is estopped from setting up such a defence.

Under the agreed state of facts, the following questions are suggested by the plaintiff for our determination:

*First:*    Could the president and general manager under the authority of the Board of Directors voting to buy available American Pickling Company stock at $45 a share, bind the corporation to pay $27 a share six months after the purchase of the stock?

*Second:*    Is the defendant corporation bound by the contract made by the plaintiff and deChamplain, acting for and in behalf of the defendant corporation and ratified by the defendant?

*Third:*    Can a corporation buy its own stock?

*Fourth:*    If it should be held that the defendant corporation could not buy its own stock, is the defendant corpora-

tion, by reason of its acceptance of the plaintiff's performance, estopped from taking advantage of the fact that its performance would be *ultra vires*?

(1)  1. Inasmuch as the defendant corporation had express authority under legislative amendment of its charter, passed May 20, 1908, "to buy, hold and sell stocks in other corporations," and as corporations can only act through their authorized agents; and as the board of directors by their vote of October 27th, 1908, voted "to purchase all available stock of the American Pickling Company at Forty-five Dollars per share" and said nothing about who should do the purchasing, we are of the opinion that the President and General Manager was the proper and logical agent to carry into effect the directors' vote.

It is clear that under this vote deChamplain could and did for and in behalf of the corporation, purchase stock of the American Pickling Company for the defendant.

It is admitted that some stock was bought for amounts in excess of the amount fixed by the directors' votes, but that does not concern us, in this case. Since the purchase of stock for $45 was authorized by the directors, the defendant corporation cannot claim that the President and General Manager had no authority to buy the plaintiff's stock for a fraction over $27 a share, payment therefor being postponed until six months after the American Pickling Company stock was received from the plaintiff. The vote of the directors meant that the defendant's funds could properly be used to buy the stock at a price not to exceed $45 a share. It did not prohibit the purchase at a lower price. The vote meant that the corporation could use its cash, but did not prohibit its officers from obtaining longer terms of payment.

It is admitted that the defendant had at the time the contract was made with the plaintiff either bought or was negotiating for the purchase of large blocks of Pickling Company stock; and deChamplain knowing of the drain on the defendant's cash, might very properly consider that

even at the low price at which he was obtaining plaintiff's stock, it would be to the corporation's advantage to extend the time of payment; and this is what he did in the contract upon which the plaintiff sues. It is not, as we shall show hereafter, a contract that is divisible; but the defendant in return for the delivery of her stock by the plaintiff agreed (1) to deliver to her the Investment Company stock, and (2) to pay her for the same at a later date a price that would give her the value of her Pickling Company stock, at the rate of $27⅓ per share. The defendant has admitted the two distinct parts of this agreement, and the effect thereof is, in our opinion, an agreement simply to postpone the time of payment. If deChamplain had agreed to pay the plaintiff for her Pickling Company stock in cash at the rate of $27⅓ a share on November 25th, 1908, the defendant would not have had the right to question the action of its President and General Manager and could not have complained if deChamplain had agreed to pay the plaintiff in cash at the end of six months; and we are clearly of the opinion that deChamplain had authority to make the purchase of the plaintiff's stock in the American Pickling Company. And, although the defendant company claims that deChamplain was not the proper officer to execute the vote of the board of directors, it is to be noted that the only other administrative officer, Bergeron, the Secretary and Treasurer, ratified the act of deChamplain, so far as he was able to do so, by paying for the stock actually redeemed out of the funds of the defendant, and by issuing the several certificates of stock for the amounts not actually redeemed.

2. It is admitted that deChamplain assumed to act in behalf of the defendant corporation and for a purpose authorized by its charter and by vote of its directors; that the terms of the contract were made known to the treasurer of the defendant, Bergeron, and that he acted upon the said agreement, that is, issued stock certificates to the plaintiff upon several occasions for the corporation and paid out to the plaintiff from the defendant's funds $1,550; and that

since the contract became known to the directors of the defendant company, they have made no offer to return to the plaintiff her Pickling Company stock, but the defendant has held the same at all times since the plaintiff delivered it to the defendant and the latter has enjoyed the proceeds thereof.

The law upon such facts is well settled.

2 Thompson on Corporations, Sec. 2020: "Where a con-tract is made by one assuming to act in behalf of a corporation and for a purpose authorized by its charter, and the corporation, after knowledge of the facts attending the transaction is brought home to its proper officers, receives and retains the benefit of it without objection, it thereby ratifies the unauthorized act and estops itself from repudiating it. The reason is, that it must exercise its option of affirming or disaffirming in whole and not in part; that it cannot disaffirm so much of the unauthorized act as is onerous while retaining so much of it as is beneficial; that it cannot keep the advantage, by repudiating the burden; that it cannot disaffirm the contract, while keeping the consideration."

In *Wisconsin Lumber Co.* v. *Telephone Co.*, 127 Iowa, 350 the plaintiff purchased and paid for certain shares of stock in defendant telephone company upon the express agreement that it should receive a pass good on all of defendant's lines and also the agreement that in case defendant sold any of its lines that it, defendant, would upon demand re-purchase the stock of the plaintiff at the par value thereof. When defendant sold certain of its lines plaintiff demanded money for its stock and defendant claimed that (1) the agreements were unauthorized by defendant, and its officers who did so agree had no authority so to do. The court in overruling this said first as to the officer's want of authority in fact, p. 355: "It clearly appears, from the implied color which the answers must give in order that the defense may be considered at all, that these officers did in fact make the contracts as alleged in the petition, under the seal of the

corporation, and that the defendant corporation has had and enjoyed the benefits of such contracts. This being true, the corporation can not accept and ratify the contracts in so far as they are beneficial to it and repudiate them in so far as they imposed any liability on its part. It accepted plaintiff's money on the strength of these contracts and cannot while retaining the same, be heard to say that its officers had no authority to make the contracts under which it was received. This is Hornbook law and we need only cite in its support *Field* vs. *Ass'n.*, 117 Iowa, 185; *Moore* vs. *M. E. Church*, 117 Iowa, 33; *Melledge* vs. *Boston Iron Co.*, 5 Cush., 158; *Phil. Co.* vs. *Howard*, 13 Howard, 307.''

*Lake St. R. R. Co.* v. *Carmichael*, 184 Ill., 348: A guaranty of a note for a deferred payment on lots purchased by a corporation, executed in the name of the corporation by its president may be enforced, although not authorized by the board of directors, when ratified by the subsequent acts of the corporation in paying interest, requesting extension of time and retaining title to the property. This case is particularly strong because the evidence showed a by-law of defendant company that no officer should contract any debt or obligation except . by direct authority of the board of directors, and evidence showed that directors took no action concerning transaction. The court said, at p. 352: ''There was no evidence that appellee had any knowledge or notice of the by-law in question and it was proved that the company had accepted and retained the title of the five lots (although it had offered to reconvey three of them to appellee subject to a general mortgage on all its property which had attached to them) and it was also proved that the company had paid one year's interest on the note and had applied for and obtained an extension of time in which to pay the principal. These acts of the company, which were not denied, were a clear ratification of the obligation which had been entered into in its name by its president and we need not consider the question of antecedent authority. When the company ratified the execu-

tion of the instrument of guaranty and acknowledged its
binding force by adopting it as its act, its relation to the
guaranty was precisely the same as it would have been had it
authorized the execution of the guaranty in the first place.
(*Paul* vs. *Berry*, 78 Ill., 158)."

*Windsor* v. *St. Paul, &c. R. Co.*, 37 Wash., 156: The
court held that where a railroad company accepts a deed of
land purchased for it by an agent, it cannot dispute the
agent's authority to agree to pay a consideration additional
to that recited as consideration in the deed. Defendant
contracted for the purchase of land through one who was not
a regular right of way agent. The court said, at p. 162:
"The company received the benefits of this transaction—
and the company, after a ratification of the contract which
was brought about through the agency of this man, ought
not to be allowed to dispute his agency in its interests."

In *Edelhoff* v. *Horner, etc. Co.*, 86 Md., 595, the officers
(president, vice-president and treasurer) executed a mort-
gage without any express authority. The corporation
received the money and used it in its business. The court
held that the corporation was bound, saying at p. 609:
"Now while it may be true as a general rule that ministerial
officers of a corporation without authority expressly con-
ferred or to be implied from previous conduct, cannot pledge
the property of the corporation, yet when a mortgage of its
chattels has been made by such officers for the purpose of
securing funds to pay its debts and continue its business and
it receives the full benefit of the transaction without objec-
tion being made, it will be presumed to have authorized or
ratified the acts of its officers. *Pittsburg C. & S. R. Co.*
vs. *Bridge Co.*, 131 U. S. 371; 5 Thompson on Corporations,
6175. This principle is founded on considerations of
common honesty. One who neglects to disavow promptly
the acts of his agent, but on the contrary receives and appro-
priates to his own use the benefit thereof, ought not to be
permitted afterwards to relieve himself of the burdens of the
transaction by denying the authority of the agent. In such

a case he makes the act his own. *Stokes* vs. *Detrick,* 75 Md. 256; *Cresswell* vs. *Lanahan,* 101 U. S. 347.''

In *Johnson* v. *Weed, etc. Co.,* 103 Wis., 291, the defendant by its vice-president indorsed a note in renewal of another note that had been given plaintiff in payment for logs delivered to G., a partner of defendant. The note had in fact been sent to vice-president to use for another purpose, but plaintiff did not know of this. When note became due, president of defendant corporation waived protest and made payment before this action was brought. The court held that the action of the president ratified the delivery, execution and use of the note.

In *Pittsburg, etc. Ry. Co.* v. *Bridge Co.,* 131 U. S. 371, the president of a railway company made a contract in behalf of the corporation with the Bridge Company, without the express authority of the board of directors. The court held that corporation was bound. Page 381: ''And when a contract is made by any agent of the corporation in its behalf and for a purpose authorized by its charter and the corporation receives the benefit of the contract without objection, it may be presumed to have authorized or ratified the contract of its agent. *Bank* vs. *Patterson,* 7 Cranch, 299; *Bank* v. *Dandridge,* 12 Wheat. 64.''

In *Clement Co.* v. *Michigan Clothing Co.,* 110 Mich. 458, the secretary and general manager of defendant offered to buy and did obtain from defendant the assignment of a claim which defendant sued on and recovered, but refused to pay agreed purchase price as directors never authorized purchase. The court said, laying aside power of general manager, the defendant must be deemed to ratify the purchase. It has inured to its benefit. It has received a large amount of money by reason of the contract. It cannot keep the proceeds and at the same time repudiate it.

In *Owyhee Land Co.* v. *Tautphas,* 121 Fed. 343, where a corporation accepted the benefits of a contract executed by the president in its behalf and repeatedly recognized the contract by payment of a large part of the consideration,

it could not question the validity of the contract after full performance by the other party thereto.   At page 347, the court said: "Such acts constitute a complete ratification even if the contract was originally unauthorized."   *Owens v. Boyd Co.*, 95 Va. 560; *Kirwin v. Washington Co.*, 37 Wash. 285; *Wolf Co. v. Bank*, 107 Ill. App. 58; *Sun Printing & Publishing Ass'n. v. Moore*, 183 U. S. 642; *Fourth National Bank v. Lumber Co.*, 142 Fed. 257; *Phillips v. Lumber Co.*, 130 Cal. 431; *Capital Co. v. March*, 10 Kans. App. 40; *Mulford v. Torrey Exploration Co.* (Colo.) 100 Pac. 596, 598.

In accord with the rule laid down in the above cases, we are clearly of the opinion that the defendant corporation has ratified the act of its President and General Manager, for the corporation has, up to the present time, retained the benefits of the plaintiff's performance; has taken and used the Pickling Company stock which it received from the plaintiff; has partially acted upon the agreement which it now seeks to repudiate; and has made absolutely no effort to place the plaintiff in the same status in which she was before she performed her part of the contract.

The defendant cannot keep the advantage of the contract and repudiate the burden.   It cannot disaffirm the contract while keeping the consideration.

3.   But the defendant contends that it had no power to purchase its own stock, under the general principles of law, claiming that such purchase of its stock by a corporation is forbidden by considerations of public policy, unless there is express authority so to purchase its stock either under the provisions of its charter or by statute.   Defendant's counsel contents himself with a general reference to 1 Morawetz, Private Corp. § 434, and several sections of Thompson on Corporations, to the above effect, but cites no cases in support thereof; and further argues that since there is in this state no statute or provision of defendant's charter authorizing such purchase, the defendant had no such power; and that therefore the action of deChamplain in agreeing

to redeem or repurchase said shares was illegal and void and could not become binding upon the defendant.

We do not ignore the fact that a very large number of cases have held, under varying circumstances, that corporations have no implied power to purchase their own stock, as laid down in 1 Morawetz, Priv. Corp. § 434, and in 4 Thom. Corp. § 4076; but we are also aware that perhaps an even greater number of cases have held that corporations have such implied power. Thus it is said in 4 Thompson on Corporations, Sec. 4075: "The rule established by the undoubted weight of authority is that corporations, without express authority, and when not prohibited by their own charter or by statutes, may buy and sell their own shares provided they do so in good faith without intending to injure, and without in fact injuring, their creditors."

In the present case there is no claim made that the purchase by the defendant of its own stock, as agreed, would injure in any way the creditors of the corporation, and no bad faith is shown in the transaction. In support of the above statement of law we deem it necessary to cite only a few of the cases:

*Fremont Carriage Mfg. Co.* v. *Thomsen,* 91 N. W. R. 376, (Neb): The plaintiff entered into a contract with the defendant corporation, made through its President and General Manager, by the terms of which it was agreed that the plaintiff should purchase eight shares of the capital stock of the defendant corporation from the defendant at $100 a share, and in consideration thereof, the defendant promised to furnish the plaintiff employment at $35 per month, and it was further agreed that if the defendant should discharge the plaintiff and terminate the contract, it might do so by the purchasing of the eight shares held by the plaintiff at par value thereof. Defendant discharged the plaintiff, but refused to buy back the stock, claiming that it had no power to do so. The court held that a corporation when not prohibited by its articles, or by statute, may buy and sell its own stock and hold, re-issue and retire the same,

provided such act is done in entire good faith and in no manner injures the right of its creditors. The court further said that a contract with a corporation by which it sells certain of its shares of stock and agrees to re-purchase the same upon the happening of a certain specified event, is not *ultra vires;* and for a breach thereof, the purchaser may recover from the corporation the amount agreed upon as the price of such re-purchase. The court also said where such a purchase has been made by and through its President and General Manager, the corporation will not be permitted to receive and retain the benefits of a portion thereof and repudiate and reject the remainder.

*U. S. Mineral Co.* v. *Camden & Driscoll,* 106 Va. 663: The declaration avers that the plaintiff sold to the defendant company a tract of twenty acres for $5,000, and of this sum, the defendant paid $2,500 in cash and for the residue delivered to the plaintiff certificates for twenty-five shares of its capital stock of the par. value of $100 per share, upon the terms and agreement on the part of the defendant corporation that within four months of the date of the agreement, to wit, the 12th day of March, 1903, it would redeem and purchase the stock so issued to the plaintiff at its face value and thereby pay the $2,500, balance of the purchase price. The court held, after citing authorities, that there can be no question that the defendant had power to purchase its own stock under the circumstances of the case stated in the declaration. Demurrer on the ground that a corporation has no power to purchase its own stock and that the contract set out was an unlawful contract and a fraud upon the other stockholders should be overruled.

*Vent* v. *Duluth Coffee & Spice Co.,* 64 Minn., 307: The plaintiff purchased from the defendant corporation a number of shares of its capital stock by an agreement which provided that at the end of a certain time the plaintiff could at his option return the stock and receive back the purchase price. The plaintiff exercised the option, offered to return the stock and demanded the purchase price. In an action to

recover such price, it was held that the agreement is in the nature of a conditional sale with the option to the purchaser to rescind or revoke and as between the plaintiff and defendant, the rights of creditors not being involved, the agreement by the defendant to receive back the stock and pay back the price therefor, is not *ultra vires*.

*Browne* v. *St. Paul Plow Works*, 62 Minn. 90: B. sold and delivered to P., a corporation, certain letters-patent for the consideration of the issue and delivery to B. by P. of sixty shares of its capital stock and its agreement to redeem the same in cash at the par value of $3,000 at the end of five years, if so requested by B., which he did, and tendered back the shares of stock which P. refused to receive and also refused to pay the sum of $3,000, but retained the letters-patent and made no attempt to rescind the contract and B. brought suit against P. Held that B. is entitled to recover as his damages the agreed value of the stock.

*Leonard* v. *Draper*, 187 Mass., 536: A promissory note had been given by a corporation to pay for certain shares of its own stock that it had seen fit to purchase. It was claimed in defense that the purchase of shares of its own stock was illegal. The court held that such a purchase was not a reduction of the capital stock, for the stock was kept in existence, ready to be sold and transferred to another party. At page 538, the court said: "The right of corporations to purchase their own stock, unless forbidden by statute, has been recognized. *Dupee* vs. *Boston Water Power Co.*, 114 Mass. 37, and cases cited."

*City Bank* v. *Bruce*, 17 N. Y. 507: The court of appeals held that in the absence of prohibition by statute a corporation may purchase its own stock, hold it unextinguished, and re-issue it and that it is simply a question of intention whether such a purchase operates to diminish the capital.

*Blalock* v. *Mfg. Co.*, 110 N. C. 99: A corporation, unless restrained by some provision of its organic law, may purchase its own stock from holders thereof, and the latter are entitled to all the rights of other creditors of the corporation

for protection and enforcement of their demand for payment.

And see *Dock* v. *Schlichter Jute Cordage Co.*, 167 Pa. 370; *Howe &c. Co.* v. *Jones*, 21 Tex. Civ. App. 198; *Rogers* v. *Association*, 30 Utah, 188; *Farmers' etc. Bank* v. *Champlain Transportation Co.*, 18 Vt. 131; *Pabst* v. *Goodrich*, 133 Wis. 43; *Chillicothe Branch* v. *Fox*, 3 Blatchford, U. S. 431; *Burnes* v. *Burnes*, 137 Fed. 781; *In re Castle Braid Co.*, 145 Fed. 224; *Republic Life Ins. Co.* v. *Swigert*, 135 Ill. 150; *Fraser* v. *Ritchie*, 8 Ill. App. 554; *West* v. *Averill Grocery Co.*, 109 Iowa, 488; *Dacovich* v. *Canizas*, 152 Ala. 287.

And it has been held that a statute prohibiting corporations to purchase their own stock does not prevent a corporation selling treasury stock on condition that the buyer might rescind. Such a transaction constitutes a conditional sale and an indivisible contract. 4 Thomp. Corp. § 4077 (at end p. 629); *Mulford* v. *Torrey Exp. Co.* (Colo.) 100 Pac. 596, 598. And see other cases, *supra*, in support of the same general principle, where there was, at the time of the sale of the stock, a condition of repurchase, within a fixed time. *Rogers* v. *Bldg. & Savg. Ass'n.*, 30 Utah, 188; *Browne* v. *St. Paul Plow Works*, 62 Minn. 90; *Vent* v. *Duluth C. & S. Co.*, 64 Minn. 307; *U. S. Mineral Co.* v. *Camden & Driscoll*, 106 Va. 663; *Fremont Carriage Co.* v. *Thomsen*, 91 N. W. (Neb.) 376; *Chapman* v. *Ironclad Rheostat Co.*, 62 N. J. L. 497.

Under the agreed facts of this case, we are of the opinion that the sale of the defendant's stock to the plaintiff was made upon the express condition of repurchase of the same by the defendant for a fixed price and at a fixed time; that the transaction constituted a conditional sale, and an indivisible contract; that the same was not *ultra vires;* and that the plaintiff has a right to recover for the value of the stock remaining in her hands, at the agreed price of $2.50 per share.

In regard to the general principles; contended for by the defendant, that a corporation, in the absence of express statutory or charter authority, has no implied power to purchase its own stock, as held by some of the leading courts

of this country (4 Thomp. Corp. § 4076), we find that some of the leading cases cited deal with circumstances involving insolvency and the rights of creditors, where the purchase of the stock was shown to be injurious to creditors; or where such purchase was a fraud upon creditors or upon other stockholders; see *Bank* v. *Wickersham*, 99 Cal. 655; *Kassler* v. *Kyle*, 28 Colo. 374; *Crandall* v. *Lincoln*, 52 Conn. 73; *Olmstead* v. *Vance & Jones Co.*, 196 Ill. 236; *Currier* v. *Lebanon Slate Co.*, 56 N. H. 262.

We do not doubt the authority of these cases, so far as the facts show any fraud upon the rights of creditors or of other stockholders; but in the case at bar it does not appear that the rights of creditors or other stockholders are involved; and further discussion of the line of authorities last above referred to is therefore unnecessary.

It is to be understood that our opinion that the agreement made by the defendant's president and general manager to repurchase the stock issued to the plaintiff as a condition of the contract of sale, was a legal and valid contract, has been ratified by the subsequent conduct of the defendant, and was not, under the facts of this case *ultra vires*, is based solely upon the agreed facts; whether a corporation has an implied power to purchase its own stock under other circumstances may well be left to be determined when a case involving such other circumstances shall arise.

In view of the foregoing, it becomes unnecessary to discuss the fourth question suggested by the plaintiff.

The papers in the case will be sent back to the Superior Court for Providence County with our decision certified thereon, in accordance with this opinion, to the effect that the plaintiff is entitled to recover from the defendant the sum of $2,260, with interest thereon, as claimed in the plaintiff's bill of particulars at $102.25, making the total amount of the judgment, as of the date of the plaintiff's writ March 3, 1910, the sum of $2,352.25.

*Waterman, Curran & Hunt*, for plaintiff.
*Quinn & Kernan* for defendant.