*Decision will be entered under Rule 50.*

R. J. REYNOLDS TOBACCO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71901.   Promulgated April 27, 1937.

*J. G. Korner, Jr., Esq., D. H. Blair, Esq.,* and *M. A. Braswell, Esq.,* for the petitioner.

*A. H. Fast, Esq.,* and *E. C. Adams, Esq.,* for the respondent.

956

OPINION.

VAN FOSSAN: The sole issue in this case is whether petitioner by purchasing shares of its own stock, for cash, and later canceling the certificates and selling and issuing new certificates representing such shares for cash, realized a taxable gain. The amount of gain, the acquisitions and dispositions by petitioner of its own stock, the cost and sale prices thereof, and all other material facts are undisputed. There is only the question of law, whether the profit on the several transactions, $436,581.21, is taxable income. By stipulation of the parties this sum is reduced to $286,581.21 because of a $150,000 dividend.

At the time petitioner's tax return was made the regulations of the Treasury Department, article 66, Regulations 74,[1] provided that "a corporation realizes no gain or loss from the purchase or sale of its own stock." Petitioner's return conformed to the regulations then in force, as it reported therein nontaxable income of $436,581.21 under the notation "Profit R. J. R. Stock." This was in accord with the manner in which petitioner had reported similar transactions for the years 1924 to 1928, inclusive, as hereinabove set forth.

Under date of May 2, 1934, article 66, Regulations 74, together with article 543, Regulations 65 and 69, and article 66, Regulations 77, being the regulations under the Revenue Acts of 1924, 1926, 1928, and 1932, was amended by Treasury Decision 4430.[2] Following this amendment of his regulations respondent determined that the petitioner herein realized a net taxable profit from "trafficking" in its own stock in 1929. His determination gives effect to the losses sustained on some transactions and to the profits realized on others. By his amended answer respondent asks that petitioner's tax liability for 1929 be increased accordingly.

In his brief respondent admits that T. D. 4430 changes a long standing departmental construction, and he concedes it to be a well established rule of law that long continued executive construction contained in regulations must be deemed to have received legislative approval by the reenactment by Congress of the same statutory provision without substantial change. However, he asserts that this rule

---

[1] ART. 66. *Sale by corporation of its capital stock.*—The proceeds from the original sale by a corporation of its shares of capital stock, whether such proceeds are in excess of or less than the par value of the stock issued, constitute the capital of the company. If the stock is sold at a premium, the premium is not income. Likewise, if the stock is sold at a discount, the amount of the discount is not a loss deductible from gross income. If, for the purpose of enabling a corporation to secure working capital or for any other purpose, the shareholders donate or return to the corporation to be resold by it certain shares of stock of the company previously issued to them, or if the corporation purchases any of its stock and holds it as treasury stock, the sale of such stock will be considered a capital transaction and the proceeds of such sale will be treated as capital and will not constitute income of the corporation. A corporation realizes no gain or loss from the purchase or sale of its own stock. (See article 176.)

[2] *Acquisition or disposition by a corporation of its own capital stock.*—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But where a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of applicable statutes.

is to be applied only when it "does no violence to the letter or spirit' of the provisions construed", *Brewster* v. *Gage*, 280 U. S. 327, 336, and where the regulation operates to create a rule out of harmony with the statute, the regulation is a mere nullity, *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129, affirming 29 B. T. A. 395; *Lynch* v. *Tilden Produce Co.*, 265 U. S. 315; *Miller* v. *United States*, 294 U. S. 435, and cases cited at page 440; *Schafer* v. *Helvering*, 83 Fed. (2d) 317. He submits that the amended regulation is a reasonable interpretation of the Congressional intent expressed in the statute.

The statutory provisions which the original regulation, article 66, Regulations 74, and the amendment thereto, T. D. 4430 *supra*, interpret are contained in section 22 of the Revenue Act of 1928, wherein the Congress defines "gross income." [8] As pointed out by counsel for petitioner in their brief, the interpretation and administration of this section of the statute in like or similar situations to that here obtaining have been uniform under all revenue acts, with the possible exceptions hereinafter noted, until the promulgation of respondent's T. D. 4430 on May 2, 1934.

This uniformity of construction and administration of the statute is one of the two principal arguments upon which petitioner rests its case. With great care petitioner's brief dovetails the regulations, rulings and decisions of the Commissioner, the decisions of this Board, and the decisions of the courts, with the passage of the several revenue acts, in order to show the repeated reenactment of the definition of "gross income" after such regulations, rulings, and decisions were promulgated or made. Petitioner submits that over this period of approximately 21 years the repeated reenactment of the definition without change, modification or amendment constitutes legislative approval and adoption of the departmental interpretation. Our attention is particularly directed, *inter alia*, to the decisions of the Supreme Court in. *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552; *Helvering* v. *Bliss*, 293 U. S. 144; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289; *McFeeley* v. *Helvering*, 296 U. S. 102; and *Koshland* v. *Helvering*, 298 U. S. 441.

These decisions, and the others considered, establish the rule that great weight should be given "to an administrative interpretation

---

[8] SEC. 22. GROSS INCOME.

(a) *General definition.*—"Gross income" includes · gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

long and consistently followed, particularly when the Congress, presumably with that construction in mind, has reenacted the statute without change * * * [citing cases]." In addition, these decisions establish the rule that where a statute "uses ambiguous terms, or is of doubtful construction, a clarifying regulation or one indicating the method of its application to specific cases not only is permissible but is to be given great weight by the courts." And finally these decisions establish that "the same principle governs where the statute merely expresses a general rule and invests the Secretary of the Treasury with authority to promulgate regulations appropriate to its enforcement", *Koshland* v. *Helvering, supra.* It is this latter rule which petitioner desires to invoke in this proceeding.

However, there is another rule of equal importance which the Supreme Court has stated and restated many times. This rule is to the effect that, if the departmental construction is obviously or clearly wrong the Court will so hold, regardless of the long continued practice in administering the act. *United States* v. *Graham*, 110 U. S. 219; *Wisconsin Central Railroad Co.* v. *United States*, 164 U. S. 190; *Manhattan General Equipment Co.* v. *Commissioner, supra; Koshland* v. *Helvering, supra.* The Supreme Court has variously stated the rule, always to the same effect, that long continued departmental construction " * * * is not to be overturned unless clearly wrong, or unless a different construction is plainly required", *United States* v. *Jackson*, 280 U. S. 183, 193; "* * * will not be disturbed except for weighty reasons", *Brewster* v. *Gage*, 280 U. S. 327, 336; "* * * ought not to be disturbed now unless it be plainly wrong", *Universal Battery Co.* v. *United States*, 281 U. S. 580, 583; "* * * will not be overruled except for weighty reasons", *Fawcus Machine Co.* v. *United States*, 282 U. S. 375, 378; " * * * will not be judicially disturbed except for reasons of weight, * * * ", *McCaughn* v. *Hershey Chocolate Co.*, 283 U. S. 488, 492.

These decisions, and others of similar tenor, expressly point out that circumstances may arise where the Court will refuse to follow the departmental construction, even though long continued and followed by subsequent reenactments by the Congress of the statutory section in question. In two recent decisions, *Manhattan General Equipment Co.* v. *Commissioner, supra*, and *Koshland* v. *Helvering, supra*, the Supreme Court repudiated the departmental construction. In the *Manhattan* case the original regulation was amended, as it has been here, and the question turned, as here, upon "whether the loss [or gain] was to be determined in accordance with the original or the amended regulation." The Court held that the amended regulation correctly expressed the will of Congress. In the *Koshland* case the

regulations had continued to the same effect, even after repeated decisions by the Supreme Court indicated their error, with the result that when the question was finally presented to the Court it expressly and decisively overruled the departmental construction.

As already stated, the situation here with respect to the original and amended regulations is analogous to the situation in *Manhattan General Equipment Co., supra*. There the Court stated that "not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. *International Railway Co.* v. *Davidson*, 257 U. S. 506, 514." So here, we must determine whether the amended regulation is consistent with the statute and whether it is reasonable.

Briefly summarizing the facts, it appears that petitioner acquired on the open market during the taxable year 574,880 shares of its own stock for which it paid cash. During the taxable year it sold 209,000 shares of its own stock for cash. The excess of the sums received over the sums paid out in the various transactions in its own stock amounted to $436,581.21.

Considering the magnitude and extent of petitioner's operations during the taxable year, it could hardly be denied that it was dealing "in its own shares as it might in the shares of another corporation." T. D. 4430, *supra*. There were trades between opposing parties in a large number of transactions negotiated through brokers. The stock was not retired. If petitioner's transactions had been in the shares of stock of another corporation, no one would be so bold as to deny that it realized a net taxable gain therefrom. But petitioner says that since the transactions were in its own stock no gain or loss resulted because of the capital nature of each transaction. *Simmons & Hammond Manufacturing Co.*, 1 B. T. A. 803; *Hutchins Lumber & Storage Co.*, 4 B. T. A. 705; *Union Trust Co. of New Jersey*, 12 B. T. A. 688; *J. H. Johnson*, 19 B. T. A. 840; affd., *Johnson* v. *Commissioner*, 56 Fed. (2d) 58; certiorari denied, *Johnson* v. *Burnet*, 286 U. S. 551; *Houston Brothers Co.*, 21 B. T. A. 804; *Jewel Tea Co.* v. *United States*, 15 Fed. Supp. 56.

In *Houston Brothers Co., supra*, the Board fully considered and carefully reviewed its prior decisions on this question, overruled its decisions in *Behlow Estate Co.*, 12 B. T. A. 1365, and *New Jersey Porcelain Co.*, 15 B. T. A. 1059, cases in which gain or loss was recognized in transactions involving the taxpayers' own shares of stock, and reaffirmed the principle announced in *Simmons & Hammond Manufacturing Co., supra*. It is unnecessary again to cover this ground, particularly in view of the trend of decisions since *Houston Brothers Co.*

In *S. A. Woods Machine Co.*, 21 B. T. A. 818, the Board considered the same general principle and rested its decision, in part at least, upon the determination in the *Houston Brothers Co.* case. Upon appeal, *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635 (C. C. A., 1st. cir.), certiorari denied, 287 U. S. 613, the Circuit Court of Appeals reversed the Board. In the *Woods* case the corporate taxpayer received shares of its own stock in settlement of a patent infringement suit. The corporation retired the capital stock so received, but, nevertheless, the court held that taxable gain resulted. In determining the issue the court considered the statutory definition of "gross income" and the regulation interpreting the definition, section 213, Revenue Act of 1924, and article 543, Regulations 65, which are to all intents and purposes the same as section 22, Revenue Act of 1928, and article 66, Regulations 74. In the course of its opinion the court stated:

Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction involved. *Walville Lumber Co.* v. *Com. of Internal Revenue* (C. C. A.) 35 F. (2d) 445; *Spear & Co.* v. *Heiner* (D. C.) 54 F. (2d) 134. If it was in fact a capital transaction, i. e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation, the Board rule applies. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, 184, 38 S. Ct. 467, 62 L. Ed. 1054; *Eisner* v. *Macomber*, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income. The view taken by the Board of Tax Appeals (see *Houston Brothers Co.* v. *Commissioner*, 21 B. T. A. 804) presses accounting theory too far in disregard of plain facts. It is not supported by any decision which has come to our attention except those of the Board. In *Knickerbocker Imp. Co.* v. *Board of Assessors*, 74 N. J. Law 583, 585, 65 A. 913, 915, 7 L. R. A. (N. S.) 885, the plaintiff corporation was held liable for the franchise tax on its own stock which it had bought and held in the treasury. The court said: "Stock once issued is and remains outstanding until retired and canceled by the method provided by statute for the retirement and cancellation of capital stock." (Dill, J.) In *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. ——, dealing with a question somewhat similar to the present one, the court said: "we see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here." (Holmes, J.) See too, *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297. As has often been said, taxes are practical things and should be dealt with on a practical basis.

To the same effect are *Allyne-Zerk Co.* v. *Commissioner*, 83 Fed. (2d) 525 (C. C. A., 6th Cir.), affirming 29 B. T. A. 1194; *Dorsey Co.* v. *Commissioner*, 76 Fed. (2d) 339 (C. C. A., 5th Cir.), affirming

memorandum opinion of this Board; certiorari denied, 296 U. S. 589.

In the last mentioned case the court specifically considered the last sentence of article 66, Regulations 74, *supra*, and the amendment thereto, T. D. 4430. In its opinion the court states:

The point of law dealt with by the Board is whether the transaction was controlled by the last sentence of Regulations 74, Art. 66: "A corporation realizes no gain or loss from the purchase or sale of its own stock." A reading of the whole Regulations, which had existed at least since 1918, shows that it referred mainly to the original sale of the capital stock and to stock turned back by stockholders to be resold to raise more capital. It was amended in 1934 by T. D. 4430 to distinguish clearly between original capital transactions and ordinary commercial dealings in its own stock as in that of another corporation. It may well be that a corporation taking its cash and buying its own stock makes neither gain nor loss by the mere purchase. That is true of any purchase for cash. But when in a business exchange for its real estate it receives in part its own stock it is converting by sale a previous purchase, and if what it receives has a fair market value the gain or loss realized in the exchange must be measured and taxed. It is not the purchase of the stock but the sale of the real estate that is regarded.

The petitioner contends that the *S. A. Woods Machine Co.* reversal in no wise involved or turned upon the principle of *Simmons & Hammond Manufacturing Co.*, which, it is asserted, is the present rule of the Board. It is so urged despite the reversals of Board decisions in *Schiller Piano Co.*, 23 B. T. A. 376; reversed on confession of error by Commissioner, *Schiller Piano Co.* v. *Commissioner*, 58 Fed. (2d) 1085; *Boca Ceiga Development Co.*, 25 B. T. A. 941; reversed, *Commissioner* v. *Boca Ceiga Development Co.*, 66 Fed. (2d) 1004; and despite the decisions of the Board in *Houghton & Dutton Co.*, 26 B. T. A. 52; *James D. Robinson*, 27 B. T. A. 1018; affd., *Robinson* v. *Commissioner*, 67 Fed. (2d) 972; *Niagara Share Corporation*, 30 B. T. A. 668.

While no one of the foregoing decisions specifically overruled the doctrine of *Simmons & Hammond Manufacturing Co.*, *supra*, the decisions are at variance with the principle of the latter case. Indirectly, if not directly, *Simmons & Hammond Manufacturing Co.* has been overruled. In the *Houston Brothers Co.* case the Board stated, after its review of the authorities: "The foregoing considerations, in our opinion, demonstrate the soundness and wisdom of the rule of the regulations and of the *Simmons & Hammond* case. When a corporation engages in a transaction which involves the receipt or disposition of its own shares, no gain or loss is recognizable in determining its taxable income." The *Houston* case was not appealed, but the principle upon which it was decided was expressly repudiated by the court in *Commissioner* v. *Woods Machine*

*Co.*, *supra*, wherein it is stated that the Houston decision "presses accounting theory too far in disregard of plain facts."

An examination of the *Simmons & Hammond Manufacturing Co.* case, *supra*, reveals certain facts analogous to those in this proceeding. There, the corporate taxpayer purchased 94 of the 323 shares of its own outstanding stock from four stockholders. It paid three stockholders $6,800 cash for 34 shares, and paid one stockholder $8,697.40 in cash and $5,449.61 in property of the company for 60 shares. During the same taxable year the corporation sold the 94 shares, purchased at a cost of $20,947.01, to its two principal stockholders, 47 shares each, for the sum of $10,340, and claimed a loss as a result thereof of $10,607.01. The Board refused to allow the loss, holding that the purchase and resale by the corporation of 94 shares of its own stock "constituted a capital transaction"; that by the purchase of its own stock the corporation sustained no loss; that the resale of the stock resulted in no loss to the corporation; and that the method used by the corporate taxpayer "was in truth and in fact a distribution of surplus" to its two principal stockholders, Simmons and Hammond.

Under the facts in this proceeding we are unable to see how it could be said that petitioner's purchases and sales of its own stock were, in truth and in fact, distributions of its surplus. The various transactions in its own stock were directed toward remedying a harmful situation among the retailers of its products, toward protecting its employees, its trade brands, and its business, and in pursuance of a long established policy of widening its stockholding base. We have found no evidence in this record indicating that distribution of the corporation's surplus was the objective of these transactions. The fact is that petitioner's cash was reduced with each purchase, and increased after each sale by the proceeds thereof, and that during the interval between purchase and sale the shares appeared in an account designated "Investments in Non-competitive companies."

As above noted, the record establishes that the primary purposes of the corporation in buying and selling its own stocks were to get wider stock ownership and to support the market, both normal business motives frequently employed. Albeit there is no testimony that the immediate profit motive was present, the reader of this record would be naive indeed who would not observe such a motive interlarded in the entire situation. The instant tax year does not present an isolated instance. It presents merely the current result of a practice extending over a period of several years.

Another contention upon which petitioner rests its case is that a corporation's own stock is not "property" or "assets" in its own hands.

citing *People* v. *Kelsey*, 93 N. Y. S. 369; *Stevens* v. *Olus Manufacturing Co.*, 130 N. Y. S. 22; *Borg* v. *International Silver Co.*, 11 Fed. (2d) 147. We find little of assistance in these cases. One phrase from the *Borg* case is noteworthy, however, and that is where the court, in making its pronouncement of its conclusion, states: "It makes no difference whether this satisfies ideal accounting or not." We are not concerned with the bookkeeping entries that would be required to record the transactions in petitioner's own stock, nor is it material to our purposes whether the increment of gain be denominated "contingent profits" or be called by some other name.

The courts of the various states have established by an overwhelming weight of authority that a solvent corporation can purchase and hold its own shares of stock, and the question of whether it holds the purchased stock as an asset is largely a matter of intent. *Pabst* v. *Goodrich*, 133 Wis. 42; 113 N. W. 398, and cases cited; *Draper* v. *Blackwell & Keith*, 138 Ala. 182; 35 So. 110; *City Bank* v. *Bruce*, 17 N. Y. 507; *Johnson County* v. *Thayer*, 94 U. S. 631; *Adam* v. *New England Inv. Co.*, 33 R. I. 193; 80 Atl. 426; *Scriggins* v. *Dalby Co.* (Mass., 1935), 195 N. E. 749; *San Antonio Hardware Co.* v. *Sanger* (Texas), 151 S. W. 1104; see also note in 61 L. R. A. 621 and discussion of *Leland* v. *Hayden*, 102 Mass. 542, appearing at page 623; Cook on Corporations, §§ 311, 313; 7 R. C. L. 551, "property" includes corporation's own stock; and 7 R. C. L. 552 regarding corporate intent.

This petitioner held its shares in its treasury with the unquestioned intention of selling and reissuing them, preferably by placing the stock in the hands of permanent investors. The technical status of the stock while in its hands concerns us little.

Petitioner advances as a further argument in opposition to taxing the gain resulting from petitioner's transactions that the purchases and the sales were capital transactions which affected the corporation's capital structure. This argument is fully met by the provisions of the amendment to the regulations. So far as transactions, capital in their nature, are concerned, T. D. 4430, *supra*, expressly and correctly excludes them from classification as taxable transactions. It seeks to reach only those transactions which are actually and in truth ordinary commercial dealings by a corporation in its own stock. The fallacy in petitioner's position is that its dealings in its own stock do not fall within the category of capital transactions.

To hold the contrary and sustain petitioner's position that no taxable profit accrues when a corporation, with no proven purpose of effecting changes in its capital structure, goes into the market and buys its own stock, places and holds the same in its investment

account and then, a favorable opportunity presenting itself, sells the same through the market at a higher price than it paid for the same, would require us to engage in the exploration of the metaphysical concepts of accounting far beyond the realm of practical legal reasoning. It "presses accounting theory too far in disregard of plain facts."

We have observed that the Supreme Court has held that a regulation or administrative practice which has been long followed and has received legislative sanction should not be overturned except for weighty reasons. That such regulation or practice is based on a false premise; that it elevates to a position of authority a concept which runs counter both to reason and ordinary business judgment; that it prefers a highly artificial interpretation to the usual rationale of normal minds would seem to be "weighty reasons" for dethroning such a regulation or practice.

In our opinion the regulation, as amended, is reasonable, and is consistent with the statute. The prior regulations do not meet these tests. Therefore, the respondent's determination is approved.

In so far as *Simmons & Hammond Manufacturing Co.*, *supra*, and cases following it conflict with this decision, they are hereby overruled.

If, as a result of our decision herein, petitioner's taxes to the States of Virginia and North Carolina are thereby increased, provision should be made for proportionately increasing petitioner's allowable deductions.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MORRIS, MURDOCK, and LEECH dissent.

ARUNDELL and TURNER did not participate in the consideration of or decision in this report.