HAMMOND IRON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89617.  Promulgated January 16, 1940.

*E. L. All, Esq.*, and *A. J. Bowron, Jr., Esq.*, for the petitioner.
*Stanley B. Anderson, Esq.*, for the respondent.

#### OPINION.

HILL: Respondent determined a deficiency in petitioner's income tax for the year 1933 in the amount of $2,487.25, from which petitioner appeals and assigns as error the action of respondent in disallowing a deduction of $109,950.59 claimed as a capital loss resulting from the sale of a portion of petitioner's assets to the First National Bank of Birmingham, Alabama, as trustee under the will of Morris W. Bush, deceased, in exchange for shares of petitioner's own stock, thereafter held as treasury stock.

Petitioner is a corporation, organized under the laws of Delaware, with its principal office and place of business at Birmingham, Alabama.

In 1933 petitioner had issued and outstanding 2,000 shares of common stock, of which 500 shares were owned by the Morris W. Bush

estate, and 1,500 shares (less qualifying shares) were owned by one Horace Hammond. In the same year petitioner also had outstanding 4,000 shares of preferred stock, of which the Bush estate owned 1,500 shares and Hammond 2,500 shares.

Morris W. Bush died sometime in 1932, and the First National Bank of Birmingham was appointed trustee under his will. Hammond was the majority stockholder of petitioner and desired to acquire control of the stock held by the Bush estate. At a special meeting of the board of directors of petitioner, held on December 15, 1933, a resolution was adopted authorizing Hammond, as president of the corporation, to purchase in its name the shares of stock held by the Bush estate, and to pay for such stock in cash or other assets of the company, or both.

Under date of December 20, 1933, an agreement was entered into between petitioner and the bank, as trustee of the Bush estate, whereby the trustee agreed to sell to petitioner 1,500 shares of its preferred and 500 shares of its common stock for the price of $103,231.01, and other considerations not involved in the present proceeding. The agreement recited that the price of $103,231.01 was payable by petitioner through delivery to the trustee of certain specified securities then owned by petitioner having an agreed appraised value of $103,231.01. The agreement was duly carried out in accordance with its terms.

There was no active trading in petitioner's stock on the market, and in December 1933 there had been no recent sales of its stock. The value of the stock received by petitioner under the contract of December 20, 1933, in exchange for a portion of its assets, was determined on the basis of the value of the assets back of the stock. The cost of the securities exchanged by petitioner for shares of its own stock was $109,950.59 in excess of the appraised value of the securities transferred to the Bush estate. The parties have stipulated that the amount of the loss deduction claimed by petitioner is correct, if petitioner is entitled to any deduction on that account.

The 1,500 shares of preferred stock and 500 shares of common stock above referred to have been held, and in all respects treated, by petitioner as treasury stock since the date of acquisition.

Respondent argues that petitioner is not entitled to deduct a loss on acquisition of its outstanding stock in exchange for a portion of its assets for the reason that the transaction resulted in a partial liquidation of petitioner. Respondent cites *United States* v. *Gendron Wheel Co.*, 100 Fed. (2d) 57, and *Meurer Steel Barrel Co.* v. *Commissioner*, 35 Fed. (2d) 1019, holding in substance that the transfer of assets by a corporation to its stockholders in exchange for shares of the corporation's own stock is not a sale of assets giving rise to deductible losses

but in effect a liquidating dividend. Respondent also cites article 71 of Regulations 77, Revenue Act of 1932, the pertinent provisions of which are quoted in the margin.[1]

Petitioner says that it is not claiming any loss on account of the purchase or sale of its own stock, but that the loss claimed was sustained *in selling its assets*. In support of its position petitioner cites *Allyne-Zerk Co.* v. *Commissioner*, 83 Fed. (2d) 525; *Commissioner* v. *S. A. Woods Machine Co.*, 57 Fed. (2d) 635, reversing 21 B. T. A. 818; certiorari denied, 287 U. S. 613; *Spear & Co.* v. *Heiner* (U. S. Dist. Ct., Pa.), 54 Fed. (2d) 134; *Dorsey Co.* v. *Commissioner*, 76 Fed. (2d) 339; certiorari denied, 296 U. S. 589.

It would be inappropriate and futile for us to discuss herein on their merits the contentions of the parties or the decisions of the lower courts cited by the parties, since the Supreme Court of the United States definitely decided the question involved on January 30, 1939, in *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, affirming 97 Fed. (2d) 302, which reversed 35 B. T. A. 949. The Supreme Court in that case held that, under section 22 (a) of the Revenue Act of 1928, gain accruing to a corporation on the purchase and resale of shares of its own stock did not constitute gross income for tax purposes. So far as material here the provisions of section 22 (a) of the Revenue Act of 1932, which governs the instant proceeding, are the same as those of the corresponding section of the 1928 Act. The Court quoted the following provisions from article 66 of Treasury Regulations 74, promulgated under the 1928 Act:

If * * * the corporation purchases any of its stock and holds it as treasury stock, the sale of such stock will be considered a capital transaction and the proceeds of such sale will be treated as capital and will not constitute income of the corporation. A corporation realizes no gain or loss from the purchase or sale of its own stock.

Substantially similar provisions are contained in article 66 of Regulations 77, promulgated under the 1932 Act. Article 66 of Regulations 74 and 77 was amended by T. D. 4430, May 2, 1934, C. B. XIII-1, p. 36, the material portion of the amended regulations being quoted in the Court's opinion as follows:

Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. * * *

But where a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. * * * Any gain derived from such transaction is subject to tax, and

---

[1] No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition.

any loss sustained is allowable as a deduction where permitted by the provisions of applicable statutes.

The Court pointed out in its opinion that the administrative construction embodied in the regulation prior to amendment has since at least 1920 been uniform, and "under the established rule Congress must be taken to have approved the administrative construction and thereby to have given it the force of law." The Court further held that the amended regulation may not be applied retroactively, and that tax liability must be determined in conformity to the regulation in force during the taxable year.

On authority of *Helvering* v. *Reynolds Tobacco Co.*, *supra*, the deficiency determined by respondent in the case at bar is approved.

*Decision will be entered for the respondent.*