## APPEAL OF FARMERS DEPOSIT NATIONAL BANK AND AFFILIATED BANKS.

Docket No. 6220.     Decided November 16, 1926.

1. The provisions of section 240(a) of the Revenue Act of 1918, which require affiliated corporations to make a consolidated return of net income and invested capital, contemplate that the affiliated group shall be treated as existing with the attributes of a single taxpayer.

2. Shares of capital stock of any of the members of an affiliated group, outstanding in the hands of the public, are shares of capital stock of the affiliated group.

3. The sale by one member of an affiliated group to other than members thereof, of shares of capital stock owned by it in another member of the group, the affiliation continuing, is a sale by the affiliated group of its own capital stock.

4. The sale by an affiliated group of shares of its own capital stock must be treated as if it were a sale by a corporate taxpayer of its own capital stock—a capital transaction which does not result in either a taxable gain or a deductible loss.

5. The consolidated invested capital should be increased from the date of the sale by the amount of the proceeds realized by the affiliated group from the sale of its own capital stock.

*Maynard Teall, Esq.,* for the petitioner.
*E. C. Lake, Esq.,* for the Commissioner.

This is an appeal from the determination of deficiencies for the years 1919 and 1920, aggregating $47,834.60. The questions for determination are whether the gain realized on the sale of stock of an affiliated company constitutes income, and whether the proceeds of such sale may be included in invested capital.

### FINDINGS OF FACT.

The Farmers Deposit National Bank, hereinafter called the petitioner, is a national bank incorporated under the laws of the United States, with its principal office at Pittsburgh, Pa.   In 1919 it was affiliated, under the provisions of the Revenue Act of 1918, with the Farmers Deposit Trust Co. and the Farmers Deposit Savings Bank, and for that year the three banks filed a consolidated return.

On January 1, 1919, the Farmers Deposit Trust Co. owned 232 shares of stock of the petitioner which it had purchased prior thereto for $24,492.   On April 17, 1919, the Farmers Deposit Trust Co. purchased 2,183 additional shares of stock of the petitioner company for $218,300, making a total of 2,415 shares acquired at a total cost of $242,792.   On October 15, 1919, it sold all of the 2,415 shares for $338,003.40, which is $95,211.40 in excess of the cost of the stock. This amount ($95,211.40) has been included by the Commissioner in income for the year 1919.   The Commissioner has not included the sale price of the stock ($338,003.40) in invested capital for 1919.

### OPINION.

ARUNDELL: The record shows that the Farmers Deposit Trust Co., the Farmers Deposit Savings Bank, and the Farmers Deposit National Bank were affiliated throughout the years 1918 and 1919, and that these affiliated companies filed consolidated returns of net income and invested capital for those years. The Commissioner's deficiency notice indicates that he regarded the affiliation as still existing throughout the year 1920, for he has computed the tax liability of the three companies on the basis of a consolidated return of net income and invested capital, and this action is not contested by the petitioner and affiliated companies.   At the beginning of the taxable year 1919, the Farmers Deposit Trust Co. owned but 232 shares of the capital stock of the Farmers Deposit National Bank.   On April 17, 1919, it acquired 2,183 additional shares, making a total of 2,415 shares owned in the Farmers Deposit National Bank.   On October 15, 1919, it sold its entire holdings.   If the three companies were affiliated throughout the years 1918 and 1919, as admitted by the parties, as well as during the year 1920, as the deficiency letter indicates, then it is obvious that the ownership by the Farmers Deposit Trust Co. of this stock in the Farmers Deposit National Bank was not the basis for the affiliation of those two companies, and the sale of that stock did not effect a " break-up " of the affiliation.   Consequently, we will assume what we think is apparent in this case—that the sale by the Farmers Deposit Trust Co. of its stockholdings in the Farmers Deposit National Bank did not disturb the existing affiliation of these

companies, and our decision upon the issues before us will be made in the light of that assumption.

The appeal presents two issues: (1) Where one member of the affiliated group purchases the capital stock of another member of the affiliated group and later sells that stock at a price in excess of cost, the purchase and sale of the stock having no effect whatever upon the existing affiliation of the two companies, does the amount received from the sale of the stocks in excess of the cost thereof constitute a taxable gain to the member making the sale, and, consequently, to the affiliated group? (2) Should the proceeds derived from the sale of the capital stock, referred to in (1) above, be included in the consolidated invested capital of the affiliated group?

There can be no doubt whatever that under the provisions of section 213(a) of the Revenue Act of 1918, a corporate taxpayer is liable for taxes upon any gain derived from the sale of the capital stock owned by it in another corporation with which it is not affiliated. The gain resulting from such a transaction is a gain derived from dealings in personal property, which is specifically made subject to the tax by the provisions of section 213(a). That a corporate taxpayer realizes no taxable gain from the sale of its own capital stock is a well established principle of the taxing statutes. It is a principle which the Commissioner has consistently adhered to in all of the regulations promulgated under the several Revenue Acts. In the *Appeal of Simmons & Hammond Mfg. Co.*, 1 B. T. A. 803, this Board held that the sale by a corporate taxpayer of its own capital stock constituted a capital transaction and that no deductible loss resulted therefrom. It follows, *per contra*, that a corporate taxpayer realizes no taxable gain from the sale of its own capital stock. If, then, the Farmers Deposit Trust Co. and the Farmers Deposit National Bank are to be regarded and treated, for the purpose of the income and profits taxes, as separate and distinct entities, the liability of the Farmers Deposit Trust Co. for taxes on the gain derived from the sale of the capital stock owned by it in the Farmers Deposit National Bank is hardly open to question. On the other hand, if it is the purpose of the statute to disregard the separate entities of these two companies and to treat them, other than for the actual assessment and payment of the taxes, as one business enterprise and one taxpayer, then any capital stock emanating from either one, irrespective of the name its shares may bear, emanates from and is the capital stock of the consolidated group; and a sale by one member of shares of capital stock owned by it in another member of the group is a sale by the consolidated group of its own capital stock, and, *a fortiori*, a sale by a corporate taxpayer of its own capital stock, which can not result in either a taxable gain or a deductible loss.

Let us proceed to an examination of the statute to determine the status of these affiliated companies for the purpose of the income and profit taxes. The statute, pertinent in its parts to the matter under consideration, reads as follows:

Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return: *Provided*, That there shall be taken out of such consolidated net income and invested capital, the net income and invested capital of any such affiliated corporation organized after August 1, 1914, and not successor to a then existing business, 50 per centum or more of whose gross income consists of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive. In such case the corporation so taken out shall be separately assessed on the basis of its own invested capital and net income and the remainder of such affiliated group shall be assessed on the basis of the remaining consolidated invested capital and net income.

In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. There shall be allowed in computing the income tax only one specific credit of $2,000 (as provided in section 236); in computing the war-profits credit (as provided in section 311) only one specific exemption of $3,000; and in computing the excess-profits credit (as provided in section 312) only one specific exemption of $3,000.

Here in the provisions of section 240(a) we have the key to the whole situation. Underlying these provisions of the statute is a purpose which must be ascertained, and the statute must be construed in such a manner as to make that purpose effective. While the return required by the provisions of section 240(a) is "a consolidated return of net income and invested capital," it is entirely clear from other provisions of the same section that the return contemplated is a return of "consolidated net income and invested capital." For instance, Congress has specified that the net income and invested capital of certain affiliated corporations shall be taken out of "such consolidated net income and invested capital," and that the remainder of the affiliated group shall be assessed on the basis of the remaining "consolidated invested capital and net income."

What is meant by "consolidated invested capital and net income"? To consolidate is defined as "to combine; to cause to become united; to merge." *Appeal of Frank G. Shattuck Co.*, 2 B. T. A. 7. "Invested capital" and "net income" are statutory concepts and are clearly defined by the statute. Section 326(a) defines "invested capital" as: (1) Actual cash paid in; (2) actual cash value of tangi-

ble property paid in for stock or shares; (3) paid-in or earned surplus and undivided profits; (4) and (5) intangible property paid in for stock or shares, subject to certain limitations. Section 232 states that, in the case of a corporation, the term "net income" means the gross income, as defined in section 233, less the deductions allowed by section 234. From these definitions we are able to deduce the meaning of "consolidated invested capital and net income." "Consolidated invested capital" means: (1) Actual cash paid in to the affiliated group; (2) actual cash value of tangible property paid in for stock or shares of the affiliated group; (3) paid-in or earned surplus and undivided profits of the affiliated group; (4) and (5) intangible property paid in for stock or shares of the affiliated group, subject to certain limitations. "Consolidated net income" means the gross income of the affiliated group, as defined in section 233, less the deductions allowed to the affiliated group by section 234.

Then, by the provisions of the second paragraph of section 240 (a), we find that, in any case in which a taxpayer is assessed upon the basis of a consolidated return, the total tax is to be computed in the first instance as a unit and then assessed upon the respective affiliated companies in such proportions as may be agreed upon among them. That is, the total tax liability of the affiliated group is to be computed and determined upon the basis of the consolidated net income and invested capital, as shown in the return, in the same manner as though the return was that of a single corporate taxpayer filed in accordance with the provisions of section 239. Further than this, the specific credit and exemptions allowed to an affiliated group, for the purpose of computing the income, war-profits, and excess-profits taxes, respectively, are the same specific credit and exemptions allowed to a single corporate taxpayer by the provisions of sections 236, 311, and 312, respectively.

Thus we find from the provisions of section 240 (a) that in any case where two or more corporations are affiliated, within the meaning of the provisions of subdivision (b) of the same section, a single return setting forth the items of gross income and the deductions of the affiliated group satisfies the requirements of section 239 that every corporation subject to taxation shall make a return; that the tax liability of the affiliated corporations is to be determined upon the basis of the consolidated net income and invested capital, in the same manner as though the tax liability of a single taxpayer was being determined; and that in computing the tax liability of the affiliated corporations as a unit only such specific credit and exemptions are to be allowed as are allowed to a single taxpayer by the provisions of sections 236, 311, and 312. That is, for the purpose of determining the tax liability of the members of

an affiliated group, the group is to be regarded and treated as a single corporate taxpayer.

The object sought to be accomplished by Congress, in enacting section 240 of the Revenue Act of 1918, was to tax as a business unit what, in substance and in fact, as distinguished from legal theory, was a single business enterprise; to prevent the component parts thereof from evading taxation through the arbitrary shifting of income by way of false or artificial market standards; and to protect from an inequitable and unjust burden of taxation, which might otherwise obtain if subjected to the tax upon the basis of their own financial history, those members of an affiliated group whose income may be attributable in part to the facilities and capital of other members placed at their use and disposal. Thus, with reference to the insertion of the consolidated returns provisions in the Revenue Act of 1918, the Committee on Finance, in its report to the Senate, said (Sen. Rep., No. 617, 65th Cong., 3d sess., pp. 8, 9):

Provision has been made in section 240 for a consolidated return, in the case of affiliated corporations, for purposes both of income and profits taxes. A year's trial of the consolidated return under the existing law demonstrated the advisability of conferring upon the commissioner explicit authority to require such returns.

So far as its immediate effect is concerned consolidation increases the tax in some cases and reduces it in other cases, but its general and permanent effect is to prevent evasion which can not be successfully blocked in any other way. Among affiliated corporations it frequently happens that the accepted intercompany accounting assigns too much income or invested capital to company A and not enough to company B. This may make the total tax for the corporation too much or too little. If the former, the company hastens to change its accounting method; if the latter, there is every inducement to retain the old accounting procedure, which benefits the affiliated interests, even though such procedure was not originally adopted for the purpose of evading taxation. As a general rule, therefore, improper arrangements which increase the tax will be discontinued, while those which reduce the tax will be retained.

Moreover, a law which contains no requirement for consolidation puts an almost irresistible premium on a segregation or a separate incorporation of activities which would normally be carried on as branches of one concern. Increasing evidence has come to light demonstrating that the possibilities of evading taxation in these and allied ways are becoming familiar to the taxpayers of the country. While the committee is convinced that the consolidated return tends to conserve, not to reduce, the revenue, the committee recommends its adoption not primarily because it operates to prevent evasion of taxes or because of its effect upon the revenue, *but because the principle of taxing as a business unit what in reality is a business unit is sound and equitable and convenient both to the taxpayer and to the Government.* (Italics ours.)

If it is the purpose of the statute to disregard the separate and distinct legal entities of the members of an affiliated group and to

treat the group as a single corporate taxpayer, then the treatment accorded to the group should recognize it as existing with the attributes of a single taxpayer.

In the *Appeal of American La Dentelle, Inc.*, 1 B. T. A. 575, we stated as follows:

From July 1, 1919, however, Congress has said that the generally recognized principle of corporate identity was to be overridden for the purpose of the income and profits tax and that a consolidated return should be filed " if substantially all the stock of two or more corporations is owned or controlled by the same interests," which is the situation here. From July 1, in other words, the separate existences ceased for tax purposes just as effectually as if under a State statute the corporations had been consolidated for all corporate purposes. A new tax status was created.

The effect of the consolidation of two or more companies is to weld them together for the purpose of computing the tax, as though they existed, in fact, as a single business enterprise. Their separate and distinct identities are merged in the interest of their community, just as effectively, so far as concerns the determination of the income and profits taxes, as though they existed under a single charter. These principles are fundamental and go to the very root of the theory underlying the statutory requirement of consolidated returns for affiliated corporations. If these are not the correct principles, and if it was not the purpose of Congress to treat an affiliated group as a single taxpayer, then, certainly, Congress in enacting the provisions of section 240 of the Revenue Act of 1918 has fallen far short of accomplishing its purpose to prevent the evasion and inequality of taxes arising out of the arbitrary shifting of income and capital among affiliated corporations. Let us examine this phase of the case a little further.

If the separate identities of the members of an affiliated group are to be recognized and the tax determined accordingly, then the term " consolidated net income," as used in section 240(a), must mean the combined net income of the affiliated members, and the term " consolidated invested capital " must mean the total of invested capital to which each of the members would be entitled as separate companies. But consider the anomalies which would arise from such a construction. These are not so apparent in their effect upon net income as they are in their effect upon invested capital, because intercompany transactions would generally offset themselves; that is, the intercompany transactions included in the net income of one company would be offset by the deductions taken by the company with which the transactions originated. But assume that company " A " is organized on January 1, 1918, with a paid-in cash capital of $100,000, and that it immediately organizes company " B " and acquires all of that company's capital stock for $100,000 cash. Assume further that " A ",

being a holding company, has no income other than the dividends received on the stock of "B", which are nontaxable, and that the income of "B" for the year 1918 is $20,000. Undoubtedly, if they were to be treated as separate companies and taxed as such, each would be entitled to an invested capital of $100,000, and together they would have a combined invested capital of $200,000. "B", as a separate company, would be liable for a tax computed on the basis of a net income of $20,000 and an invested capital of $100,000. If the consolidated invested capital is the total of invested capital to which each would be entitled as separate companies, then the amount thereof is $200,000, and the consolidated tax liability would be computed on the basis of a net income of $20,000 and an invested capital of $200,000, notwithstanding that no part of the capital of "A" was responsible for any part of the income, that the income was entirely attributable to the employment of the capital of "B", and that, in truth and in fact, there has been but $100,000 paid in to the whole business enterprise.

Throughout the entire Title III of the Revenue Act of 1918 there stands out in bold relief the purpose of Congress to levy a profits tax, varying in rates from 30 to 80 per centum, for the calendar year 1918, upon the net earnings of all corporations in excess of a fair return upon the actual investment in the business. Does any one suppose that Congress intended that the fair return which a business enterprise was entitled to have, free from the profits taxes, should be predicated upon the actual investment in the business multiplied by the number of times it was transferred from one holding company to another? If so, corporate taxpayers would have experienced little difficulty in avoiding the profits taxes entirely. But Congress never intended that such a vehicle might be successfully employed by taxpayers to escape their just burden of taxation. On the other hand, it said, plainly enough we think, in section 240(a) of the Revenue Act of 1918, that the generally recognized principle of corporate identity was to be overridden for the purpose of the income and profits taxes; that the separate existences of the affiliated companies ceased for tax purposes. It created out of two or more affiliated companies, otherwise having separate identities, a new tax status; and when it did so Congress intended that the group should have the attributes of a single taxpayer. And where, in other sections of the statute, Congress speaks of corporations as individual taxpayers, it means as to the sections dealing with consolidated units to treat the consolidated unit as a single corporation.

Applying these principles to the facts in this case, what is the situation? The Farmers Deposit Trust Co. and the Farmers

Deposit National Bank were, during the taxable year 1919, affiliated within the meaning of section 240(b) of the Revenue Act of 1918. They were, for the purposes of the income and profits taxes, one and the same taxpayer. The sale by the Farmers Deposit Trust Co. of its capital stock holdings in the Farmers Deposit National Bank must be treated, for the purpose of the tax, as nothing more than a sale by the affiliated group of its own capital stock. The entire proceeds from the sale of this stock represented additional capital to the affiliated group—the investment of the new stockholders who purchased the stock. The sale was a capital transaction which could not give rise to a taxable gain or a deductible loss. The Commissioner erred in treating the excess of the selling price over the cost of this stock as taxable income to the Farmers Deposit Trust Co. and the affiliated group.

We pass now to a consideration of the second issue raised by this appeal, viz, whether the proceeds from the sale of this stock should be included in the consolidated invested capital for the year 1919, in which year the sale took place. The Commissioner has refused to so include them, apparently on the ground that the transaction constituted a dealing in personal property giving rise to a taxable gain, and that the proceeds are a part of the undivided profits earned during the year 1919, which, by the express provisions of section 326(a)(3) of the Revenue Act of 1918, may not be included in invested capital for the year 1919. But as we have held in connection with the first issue, the affiliated group exists, by virtue of statutory provisions, as and with all of the attributes of a single corporate taxpayer. When the Farmers Deposit Trust Co. purchased the shares of capital stock of the Farmers Deposit National Bank, which we have under consideration, assuming that they were purchased from others than members of the affiliated group, the transaction constituted in substance a partial retirement of the outstanding capital stock of the consolidation, a repurchase by a corporate taxpayer of its own capital stock, a withdrawal of a part of the capital of the consolidated group, and a return to the stockholders of their investment in the consolidation. The effect of the purchase of this stock upon the consolidated invested capital was the same as though the transaction was that of a single corporation repurchasing its own capital stock. To the extent that the purchase price of this stock exceeded the earnings available therefor, the consolidated invested capital was reduced by the transaction. When the stock was resold, assuming that it was sold to others than members of the affiliated group, the proceeds of the sale represented additional capital to the consolidation, an investment in the consolidation by a new group of stockholders, and the consolidated

invested capital of the year in which the sale took place was increased, from the date of the sale, by the amount of the proceeds realized from the sale of the stock.

*Judgment will be entered on 15 days' notice, under Rule 50.*

TRAMMELL dissents.