WALVILLE LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10295.    Promulgated May 28, 1928.

*Andrew G. Elder, Esq., Nathan W. Hill, Esq.,* and *Eugene H. Knapp, Esq.,* for the petitioner.

*Henry Ravenel, Esq.,* for the respondent.

OPINION.

LANSDON: At the hearing before the Board counsel for petitioner said:

The Walworth Manufacturing Company was dissolved in the year 1919. At the date of its dissolution that corporation owned certain shares of stock in the Walville Lumber Company which may be accepted, and I believe it is admitted as being its only asset at or immediately prior to the dissolution. The reduced shares of stock of the petitioner which were issuable to the Walworth & Neville Manufacturing Company as one of its stockholders were never, in fact, issued to that company. Instead, its proportion of the preferred stock and 629¼ shares of the common stock were issued directly to the stockholders of the Walworth & Neville Manufacturing Company, other than the petitioner, 756 shares which might in the ordinary course have been issued to the Walworth & Neville Manufacturing Company never having been issued.

This statement, while it may not be considered as evidence, is clearly an admission that the petitioner instead of issuing its shares of diminished stock to the manufacturing company, in proportion to the stockholdings thereof, actually issued them to certain of the stockholders of that company. The admission is in line with and tends to confirm the conclusion naturally deducible from the facts in evidence, that the stockholders of the two companies, including, necessarily, the companies themselves, decided to and did take a short cut across lots to accomplish the result they had in mind; that they in effect restored to the lumber company title to all its capital

stock on condition that the number of shares be decreased one-half, as they were decreased, and be issued, as they were issued, to certain of the stockholders of the manufacturing company. As a part of the final result, the 4,400 shares of the stock of the defunct manufacturing company became worthless in the hands of the petitioner which as a set-off to this loss retained 756 shares of its new stock unissued. There was evidently an agreement among the two companies and their stockholders to consider that all customary legal steps had been accomplished by the results attained.

So far as we have been able to ascertain, petitioner has received no compensation for its manufacturing company stock, except the 756 shares of its own stock remaining unissued. Considering the transaction as a whole, we have here seemingly a gain to the lumber company of 756 shares of its own authorized second issue as against a loss of the 4,400 shares of the manufacturing company's stock, a net gain or loss of the difference between these two. Substituting admitted values for shares, we have $225,967.28 loss, minus $107,197.53, which equals $118,769.75, the loss which the petitioner now alleges that it sustained in the taxable year.

These transactions could not have taken place without the lumber company's assistance; certainly not without its acquiescence. It held 4,400 of the 8,000 shares of the common stock of the manufacturing company. That is to say, its shares constituted 44/80 of the common stock and 44/90 of all the stock, and therefore, as stated in its tax return for 1919, it "held a controlling interest in the stock" of that company. It must, therefore, have decided to do the things which were done.

After reorganization the petitioner's stock consisted of 2,500 shares of preferred and 2,500 shares of common, of which 1,385¼ shares of preferred and an equal number of shares of common should have been issued to the manufacturing company, which was the owner of 55.41 per cent of the petitioner's original 10,000 shares of issued capital stock. If, after such issue, the manufacturing company had distributed the stock so received as a liquidating dividend, the petitioner, as the owner of 4,400 of the 9,000 outstanding shares of stock of the manufacturing company, would have received back 1,354¼ shares of its own stock, and other owners of the stock of the manufacturing company would have received the remainder, or 1,416 shares. Probably on account of its obligations to its preferred stockholders the manufacturing company distributed, or consented to distribution directly to its stockholders, 1,385¼ shares of the preferred and 629¼ shares of the common stock, which were due it from the petitioner after reorganization. The effect of this procedure was that the petitioner received no part of the 1,354 shares of its stock due as a liquidating dividend from the manufacturing company and received no

advantage therefrom measurable in stock other than the retention of 756 shares of its new common stock unissued.

Since each of the two companies here involved owned a controlling interest in the common stock of the other when the procedure above described was decided upon, we may assume that all the steps taken were the acts of the two corporations with the knowledge and consent of the stockholders of each. Obviously the petitioner must have agreed to relinquish a part of the liquidating dividend due it upon the dissolution of the manufacturing company in favor of the preferred stockholders of that concern. Whether the extra stock received by such preferred stockholders was a gift to them, a liquidating dividend from the manufacturing company, or a stock dividend distributed by the petitioner, can not be determined from the meager record before us and in our opinion is not material. In any event, the petitioner has proved no loss deductible from its income in the taxable year for tax purposes.

Reviewed by the Board.

*Judgment will be entered for the respondent.*