S. A. WOODS MACHINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32015. Promulgated December 19, 1930.

*Henry H. Dinneen, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

**OPINION.**

BLACK: A number of cases have been considered by the Board involving the purchase by a corporation of its own capital stock and we have uniformly held that the corporation realizes no gain or loss from the purchase or sale of its own stock. *Simmons & Hammond Mfg. Co.*, 1 B. T. A. 803; *Farmers Deposit National Bank*, 5 B. T. A. 520; *H. S. Crocker Co.*, 5 B. T. A. 537.

While the circumstances under which petitioner acquired the shares of its own common stock from the Yates Co. in this proceeding are by no means the same as in the cases above cited, we think the same rule must govern. When the petitioner acquired the shares of its common stock from the Yates Co. and retired it, it was in possession of no additional assets thereby. The situation would be different if petitioner had acquired Liberty bonds or stocks and bonds of another corporation.

For example, if petitioner had acquired 1,022 shares of the common stock of the U. S. Steel Corporation, it would have then owned something which it did not own before, viz., an interest in the U. S. Steel Corporation to the extent of the common stock acquired, and its income in the transaction would be measured by the value of the common stock at the time it was acquired. *United States* v. *Phellis*, 257 U. S. 156. But when it received 1,022 shares of its own common stock, it owned no property which it did not own before. The corporation, S. A. Woods Machine Co., was already the owner of all the property of the corporation and the acquirement of these 1,022 shares added nothing to this ownership.

It is true that the book value of the remaining 1,978 shares of common stock was increased by the acquirement and cancellation of these 1,022 shares, but that added nothing to the income of the corporation. It simply caused an appreciation in the value of the remaining shares of the common stock of the corporation.

In this proceeding we can not see where petitioner received anything which fits into the definition of income as approved in *Eisner* v. *Macomber*, 252 U. S. 189, and *Towne* v. *Eisner*, 245 U. S. 418. See also *Houston Bros. Co.*, 21 B. T. A. 804.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN did not participate in the consideration of or decision in this report.

ARUNDELL, dissenting: In my dissenting opinion in *Houston Bros. Co.*, decided this day, which case involves the same fundamental question as is here presented, I have pointed out some of the reasons for the conclusions reached.

The certificate representing 1,022 shares of the stock of the petitioner herein was delivered to it by the Yates Co. pursuant to the agreement of February 18, 1924, in lieu of profits and/or loss damages to which petitioner was entitled under the court decree. It will not be questioned that if petitioner had received cash royalties for the use of its patents or cash in settlement for the infringement of the patents, the amount received would constitute income. Money so received would be income derived from property. The same thing is true if the royalties or damages for infringement are paid in property other than cash, say Liberty bonds or capital stock of some other corporation. The essential thing is that a liability owing to the taxpayer for the use of its property is being liquidated, and that which is received in liquidation is income. Such is not the case where the taxpayer buys or sells its own stock for cash, for in neither transaction is there a liquidation of a liability owing to it.

It is not shown upon what basis the taxpayer kept its records, but assuming that it was the accrual basis, as is generally true of corporate taxpayers, then upon the court decree being rendered for the taxpayer and the ascertainment of the amount of damages, such amount became immediately accruable as income. The effect of the prevailing opinion is to say that if the taxpayer neglected to enter the receivable as such on its books, but recorded the liquidation of it as a capital stock transaction, there would be no income. Carrying out the idea expressed in the prevailing opinion, a corporation selling a bill of goods at a profit would escape tax on that transaction if it subsequently accepted payment in its own capital stock.

The *Simmons & Hammond*, *Farmers Deposit*, and *Crocker* decisions cited are not in point. There the corporations purchased and/or sold for cash their own stock or stock of affiliated companies. In the case of a purchase of its own stock by a corporation for cash, any part of the money so used that represents income has already been taxed in the year in which it was realized. To state the proposition more specifically: Assume that in 1925 a corporation has cash on hand in the amount of $100,000, and a surplus of equal amount, of which $75,000 represents paid-in surplus and the remaining $25,000 is made up of $15,000 profits earned in 1923 and $10,000 earned in 1924. If in 1925 the corporation expended the entire $100,000 cash for its own stock, quite clearly there would be no tax, for the only thing entering into the transaction that ever represented income, namely the $25,000, was subject to tax in 1923 and 1924 when realized. To make the present case analogous to the cases cited, the property exchanged for the stock must first be taken up on the books of the taxpayer. When this is done such property (i. e. the amount owing to it for royalties or damages as the case may be), becomes income either at the time the amount becomes fixed or when liquidated, depending upon the basis on which the records are kept. This is the point that has been overlooked in the majority opinion. As pointed out above, if the corporation was on the accrual basis, the account receivable became accruable as income when the amount was determined, if on the cash basis, the receivable became income when it was liquidated whether the liquidation was in cash or property.

The real question for decision is whether petitioner realized income as the result of the infringement of its patents and not whether gain or loss may arise out of transactions in capital stock as the case is treated in the majority opinion. If it is once determined that the infringement gave rise to income, it would seem that the only thing remaining to be determined is the amount actually received. The only function that the character of the property has in this de-

termination is to aid in fixing its value. At the present stage of this proceeding we are not concerned with values.

MORRIS, MARQUETTE, SMITH, PHILLIPS, and MATTHEWS agree with this dissent.