*Judgement will be entered under Rule 50.*

HOUGHTON AND DUTTON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24883. Promulgated May 12, 1932.

*J. Robert Sherrod, Esq.*, for the petitioner.
*James L. Backstrom, Esq.*, for the respondent.

54

OPINION.

ARUNDELL: Petitioner claims that as a result of the abandonment of the business of the Stamp Company in 1920 it is entitled to a loss deduction of $32,500, consisting of $25,000 cash paid for stock and $7,500 organization and promotion expenses; a bad debt deduction in the amount of $7,414.06, which was the amount owed to it by the Stamp Company; and, as either an expense or loss deduction, the amount of $53,782.24, being the Stamp Company's reserve for re-

demption of stamps, or in the alternative the portion thereof, $41,783.42, which petitioner set up on its books as a liability.

### Claimed Loss on Stamp Company Stock.

A loss on the stock of an affiliate either through sale (*Shepard Co.*, 22 B. T. A. 1368) or worthlessness (*H. Liebes & Co.*, 23 B. T. A. 787) is allowable on the theory that the sale or worthlessness occurs outside the period of affiliation. See *Manatee Crate Co.*, 22 B. T. A. 996, and cases there cited. We pointed out in the *Liebes* case that while technically affiliation might continue in the case of worthlessness, under the circumstances present there we were of the opinion that the worthlessness should be regarded as breaking the affiliation as fully as would a sale. Similarly, in *Aluminum Goods Mfg. Co.* v. *Commissioner*, 56 Fed. (2d) 568, where the business of a wholly owned subsidiary during the taxable year consisted chiefly in closing up its affairs preparatory to dissolution and it did no business after the end of the year, the court held that the parent company was entitled to deduct as losses the cost of the stock and advances made during the period of affiliation, with an adjustment for an operating loss that had been claimed and allowed in a consolidated return. In that case the subsidiary was not formally dissolved until the year following the cessation of business. In the opinion the court says that " The statute governing affiliated returns contemplated its application to active companies only. It would be a legal and commercial impossibility for a going corporation to affiliate with a corpse—the mere shell of a former corporation." We see no material distinction between the *Aluminum Goods* case and the one before us. Within the year 1920 petitioner decided to discontinue the Stamp Company's operations and thereafter no new business was sought. At the end of the year it was entirely out of business, and was hopelessly insolvent. While the balance sheet shows assets, they were more than offset by the liabilities. In order to correctly reflect the condition of the company the so-called good will and organization item should be eliminated as an asset, and when this is done the only asset of substantial amount left is accounts receivable of $20,682.42, which was far from sufficient to meet the liabilities. It is our opinion that on the showing made in this case petitioner is entitled to deduct the cost of the Stamp Company stock as a loss sustained in 1920.

We are unable to agree with petitioner that the amount of $7,500, organization and promotion expenses, should be treated as a part of the cost of the stock. The amount in dispute was originally expended by an officer of petitioner. As far as the record shows petitioner was not contemplating the acquisition of the Stamp Company stock when in 1916 it reimbursed the officer for his outlay through a credit

allowance in the Roxbury store transaction. The allowance so made gave petitioner no interest in the Stamp Company and played no part in the subsequent purchase of the stock. We accordingly hold that the cost of the Stamp Company stock to petitioner was $25,000 and the loss sustained should be computed on that basis.

### Claimed Bad Debt Deduction.

The amount claimed, $7,414.06, represents the amount that the Stamp Company owed petitioner at the close of 1920 in excess of petitioner's indebtedness to it. A similar situation existed in *Aluminum Goods Mfg. Co.*, *supra*, and it was held that the amount was allowable as a loss. It seems to us that it makes no difference whether the item is characterized as a loss or a bad debt, as the essence of the transaction is that petitioner is out of pocket the sum advanced and there is no possibility of recovering it. Technically, the item involved represents a debt and we prefer to allow it as a bad debt deduction. Clearly, the account was ascertained to be worthless when the Stamp Company business was abandoned and the petitioner assumed its liabilities. It is shown that in December, 1920, petitioner credited its accounts receivable with the amount owed to it by the Stamp Company, which in our opinion constitutes a sufficient charge-off to come within the terms of the statute allowing deductions for debts ascertained to be worthless and charged off within the taxable year.

### Stamp Redemption Reserve.

Among the Stamp Company's liabilities assumed by petitioner was the one for redemption of trading stamps in the amount of $53,782.24. This liability was entered on petitioner's books at $41,783.42, representing 77.69 per cent of the outstanding stamps which petitioner estimated it would be required to redeem. While this item is denominated a reserve, it in fact was a liability which, under the facts here, was properly accruable on petitioner's books in 1920. According to the evidence the Stamp Company was obligated to redeem the stamps brought in by customers at the rate of $2.175 per thousand, but the obligation to redeem was in the first instance an obligation of petitioner. The stamps issued bore a notation of the cash amount or the value in merchandise at which they were redeemable, and the stamp books issued by petitioner had its name printed thereon, with a statement that they would be redeemed upon presentation. The evidence further shows that the general practice was for customers to present the stamp book for redemption to the store or merchant whose name was printed thereon. As long as the Stamp Company continued in business there might be some question as to

petitioner's right to accrue the portion of the redemption value for which it was entitled to reimbursement from the Stamp Company, but when the Stamp Company ceased functioning and had no assets, it was proper for petitioner to accrue as a business expense the amount that it was required to pay. It does not appear that petitioner was ever called upon to pay any greater amount than it estimated and set up on its books, and in our opinion that amount, $41,783.42, is the proper amount to allow as a deduction.

### Income Realized on Receipt of Petitioner's Own Stock.

It has been frequently held that the recovery of a debt previously charged off as worthless and allowed as a deduction constitutes income in the year of recovery. See *Putnam National Bank*, 20 B. T. A. 45; affd., 50 Fed. (2d) 158. In this case some $74,000 owed to petitioner by Alexander McGregor when he retired from the company was claimed and allowed as a bad debt deduction for the year 1919. In 1920 petitioner obtained a partial recovery through the act of Mrs. McGregor in turning in 250 shares of petitioner's preferred stock. Petitioner ascribed a value of $80 per share to the stock and on that basis reported income of $20,000, which respondent increased to $25,000. Petitioner now claims that it realized no income on the receipt of its own stock, citing *Houston Brothers Co.*, 21 B. T. A. 804, and *S. A. Woods Machine Co.*, 21 B. T. A. 818. Since the submission of this case the *S. A. Woods Machine Co.* case has been reversed by the Circuit Court of Appeals for the First Circuit (57 Fed. (2d) 635). The effect of the opinion of the court is to hold that a corporate taxpayer realizes income in accepting its own stock in satisfaction of an obligation owing to it. As the present case arises in the First Judicial Circuit, that decision is controlling here, and we accordingly hold that petitioner realized income on the receipt of its stock. It may be plausibly argued that, considered from Mrs. McGregor's viewpoint the transaction represented a gift, inasmuch as she was not legally liable for the debt. But in so far as petitioner was concerned the transaction represented merely the liquidation of an account receivable and hence was income, no matter who satisfied the account.

We think, however, that the respondent erred in including the stock in income at its par value. The evidence shows that at the time of the transaction all parties interested carefully considered the matter of value and concluded that $80 per share was the market value. The history of the company and its record of earnings convinces us that the market value was no greater than that amount, and the stock should be included in income at that figure.

In addition to the stock, respondent included in income $5,687.50 as dividends accrued thereon from January 1, 1917, to April 1, 1920. We are unable to perceive on what theory he did so. As far as the record shows, no dividends were declared or paid during that period, and if there were any they were the property of the then owner of the stock. Certainly, after petitioner acquired the stock it would not pay dividends on it.

Reviewed by the Board.

*Decision will be entered under Rule 50.*