NIAGARA SHARE CORPORATION (OF DELAWARE), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NIAGARA SHARE CORPORATION (OF NEW YORK), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MORTGAGE SECURITY CORPORATION OF NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KNICKERBOCKER FUNDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MORSECO REALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66922–66926. Promulgated May 8, 1934.

*Ralph M. Andrews, Esq.,* and *Arthur E. Surdam, C.P.A.,* for the petitioners.

*M. B. Leming, Esq.,* and *J. P. Head, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $32,-132.42 in the consolidated income tax of petitioners for 1929. Several items of the Commissioner's determination are assailed, which will be considered separately. The proceedings were submitted upon a voluminous stipulation of facts with appended exhibits, so there is no occasion for findings. The opinion states as much of the facts as is necessary to an understanding of each point.

1. *a. Loss on liquidation of affiliated corporation.*—In August 1929 the Niagara Share Corporation of Delaware acquired shares of American Alliance Management Co., Inc., and of American Alliance Investing Corporation, for some of its own shares, and thus brought about a statutory affiliation. Thereafter, in December 1929 the Alliance companies were liquidated and in February 1930 were dissolved. During the period (August–December 1929) of Niagara's ownership of Alliance shares, Alliance had sold some of its assets at a loss. The petitioners contend that Niagara sustained a loss of $248,819.88 in the liquidation of Alliance and that such loss is a deduction under the Revenue Act of 1928.

The petitioners have clearly miscalculated the effect of the liquidation by the use of an improper method and incorrect factors. But we must pass that by because, whatever the correct loss, its deduction is prohibited by Regulations 75, art. 37 (a), *Ilfeld Co.* v. *Hernandez*, 292 U.S. 62.

*b.* The Niagara Corporation paid a fee of $5,500 to lawyers for services directly related to the acquisition of Alliance shares in August 1929. It claims a deduction of this amount as a loss on liquidation. This ground for the deduction is as untenable as the general liquidation deduction just considered. *Ilfeld Co.* v. *Hernandez, supra.* Petitioners concede that such fees are not deductible as ordinary and necessary business expenses. *Odorono Co.,* 26 B.T.A. 1355. They are not organization expenses, *James I. Van Keuren,* 28 B.T.A. 480. If they are to be treated as part of the cost of the Alliance shares, they are not deductible when the investment is made, *Robert Lyons Hague,* 24 B.T.A. 288, and the liquidation of such shares is an " intercompany transaction " which, as we have seen, precludes any deduction of such cost.

The items of $41.71 prepaid rent, $4,984.70 organization expenses, and $12,129.39 unrecorded liabilities, of the Alliance companies, are all precluded from deduction on the consolidated return because they serve only to alter the quantum of nondeductible intercompany " loss."

2. *Exchange by Niagara of Lincoln Interstate shares for its own shares.*—The Niagara Corporation having, in 1928, bought 3,000 shares of the Lincoln Interstate Holding Co. for $36,750, gave them up in 1929 to the Lincoln Co. in exchange for 225 shares of its own stock which had a value when received of $14,709.37. It claims the right to deduct the difference of $22,040.63 as a loss. The Commissioner relies upon *Houston Bros. Co.,* 21 B.T.A. 804, to support his disallowance of the deduction.

The question in various aspects has long been a vexed one, and the extant decisions are not in harmony.[1] The Commissioner, while acquiescing in the *Houston* case, appealed from the *Woods* case, 21 B.T.A. 818, and the *Boca Ciega* case, 25 B.T.A. 941, and those decisions were reversed. *Schiller Piano Co.,* 23 B.T.A. 376, was reversed upon the Commissioner's confession of error. The Commissioner now argues that the latter cases were different from the

[1] *Walville Lumber Co.,* 12 B.T.A. 152 ; reversed, 35 Fed. (2d) 445 ; *Behlow Estate Co.,* 12 B.T.A. 1365 ; *New Jersey Porcelain Co.,* 15 B.T.A. 1059 ; *J. H. Johnson,* 19 B.T.A. 840 ; affd., 56 Fed. (2d) 58 ; certiorari denied, 286 U.S. 551 ; *Houston Bros. Co.,* 21 B.T.A. 804 ; *S. A. Woods Machine Co.,* 21 B.T.A. 818 ; reversed, 57 Fed. (2d) 635 ; certiorari denied, 287 U.S. 613 ; *Schiller Piano Co.,* 23 B.T.A.. 376 ; reversed, 58 Fed. (2d) 1085 ; *Boca Ciega Development Co.,* 25 B.T.A. 941 ; reversed, 66 Fed. (2d) 1004 ; *Houghton & Dutton Co.,* 26 B.T.A. 52 ; *Winston Brothers Co.,* 29 B.T.A. 905 ; *Allyne-Zerk Co.,* 29 B.T.A. 1194 ; *Spear & Co.* v. *Heiner,* 54 Fed. (2d) 134.

*Houston* case and this case because in those cases " the real nature of the transaction " was a sale or a discharge of judgment, while here " the real nature of the transaction " is an exchange of assets for stock. This is a forced distinction which we find it impossible to adopt. If a corporation realizes gain or loss by receiving its own shares in exchange for an asset consisting of a judgment credit or a tract of land, the proposition seems equally true when the asset given up consists of corporate shares. The " real nature of the transaction " is as much a " sale " in the latter case as in the former, and the legal incidents of both seem to us to be the same.

The loss should be recognized and the deduction allowed.

*Judgment will be entered under Rule 50.*